UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| **CATHY DONOVAL**, | ) | |
| Plaintiff, | ) | 2:06-cv-00155-RCJ-(PAL) |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; DOES I-X,** inclusive | ) | |
| Defendants. | ) | |

This matter comes before the Court on Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (#20) filed June 21, 2006. The Court has considered the Motion, the pleadings on file, and oral arguments on behalf of the parties. IT IS HEREBY ORDERED that Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (#20) is *granted*.

**BACKGROUND**

On December 11, 2003, Cathy Donoval ("Plaintiff") suffered injuries in an automobile accident while driving a 2004 Toyota in Las Vegas, Nevada. The Toyota was licensed and registered in Illinois, and State Farm Mutual Automobile Insurance Company ("State Farm")

insured the vehicle under an Illinois State Farm policy. The Illinois policy named Plaintiff's father, Joseph Donoval ("Donoval"), as the insured person under the insurance contract. Donoval has resided in Illinois for the past thirty-six years, and has held insurance policies with State Farm for seven different vehicles, all insured with Illinois policies. In addition, Donoval and State Farm executed the insurance contract in Illinois. The State Farm policy lists Donvoal's Illinois address as his primary address, and Donoval pays all premiums in Illinois pursuant to Illinois rates. State Farm claims that at the time the parties executed the Toyota policy, State Farm and Donoval agreed the Toyota's principal location would be Illinois. State Farm underwriting documents also indicate that Donoval would be the Toyota's principal operator.

      Plaintiff states, however, that when Donoval entered into the State Farm Policy, Donoval indicated that the Toyota principally would be located in Nevada. Plaintiff also claims that at the time Donoval executed the Toyota policy, he informed State Farm that he would garage the vehicle in Nevada. In a signed affidavit, Donoval originally claimed that at the time he executed a policy with State Farm for the Toyota, he told the State Farm agent that his Toyota would be located in his Nevada residence and that Plaintiff would also reside in that same Nevada residence. In a deposition, Plaintiff later recanted those statements and admitted he never owned a Nevada residence when he placed the Toyota on his State Farm policy, and that it would have been impossible for him to have told the State Farm agent that Plaintiff would be residing in his Nevada residence or that the Toyota would be garaged in his Nevada residence because he did not own a Nevada residence until several months after executing the Toyota policy.

The State Farm policy provides $100,000 of uninsured/under-insured motorist ("UIM") coverage.  The other driver ("Tortfeasor") involved in this accident carried $100,000 in liability limits, and has since paid the full $100,000 to Plaintiff.  After recovering the initial $100,000 from Tortfeasor, Plaintiff sought to recover on the UIM $100,000 limit provided for in the Illinois State Farm policy, which State Farm refused to tender.  Plaintiff filed suit against State Farm on December 14, 2005, in the District Court, of Clark County, alleging that State Farm breached its insurance contract, violated the Nevada Unfair Claims Practice Act, and breached its contractual covenant of good faith and fair dealing by refusing to pay the UIM coverage.  Based on diversity jurisdiction, Plaintiff's lawsuit was removed to this Court.

State Farm claims, and Plaintiff concurs, that under Illinois law, Plaintiff cannot recover any money on the Toyota's policy because Plaintiff's vehicle does not qualify as an underinsured vehicle.  State Farm argues that Illinois law applies to this action and thus asks the Court to dismiss Plaintiff's claims.  Plaintiff argues that Nevada law should govern this case, and that under Nevada law, a genuine issue of material fact exists as to whether Plaintiff may recover additional money under the UIM coverage.

**DISCUSSION**

State Farm's Motion for Summary Judgment (#20) and Plaintiff's Opposition (#26) focus on whether or not Illinois law applies in this case.  Indeed, Plaintiff has stated that the "sole issue for this Court to consider is whether Nevada or Illinois law should apply . . . ." (#26, 4.)  Plaintiff has agreed with State Farm that if Illinois law applies, Plaintiff may not recover under this action, and that the Court should grant State Farm's motion for summary

judgment. (*Id.*)  Therefore, State Farm's Motion for Summary Judgment turns on whether Illinois law applies.

## I. Standard of Review

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment when the evidence on record establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the burden of informing the court the basis for its motion, together with evidence demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986).

## II. Choice of Law

As discussed above, State Farm asks the Court to grant its Motion for Summary Judgment because Illinois law should apply to the dispute. Both parties agree that this issue is outcome determinative, and if Illinois law applies, the Court must grant State Farm's Motion

for Summary Judgment.  Thus, before the Court can decide whether to grant summary judgment, it must first decide which state's law to apply.

**A.     Which State's Law Governs**

Because this is a diversity action field in the District of Nevada, Nevada's choice of law rules govern.  *See, e.g., Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir. 1994) ("A district court in diversity jurisdiction must apply the law of the forum state to determine the choice of law.").  When interpreting insurance contracts, Nevada courts use a "substantial relationship test" to determine which state's law applies.[1]  *See, e.g., Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993) (citing *Sievers v. Diversified Mortgage Investors*, 603 P.2d 270,  (Nev. 1979)); *see also Sierra Pac. Power Co. v. The Hartford Steam Boiler Inspection and Ins. Co.*, No. 3:04-CV-0034-LRH (RAM), 2006 U.S. Dist. LEXIS 12477, at* 7-9 (D. Nev. Mar. 6, 2006).  Under this test, the state whose law the court applies (1) must have a substantial relationship with the transaction, and (2) the transaction must not violate any public policy in Nevada.  *Williams*, 849 P.2d at 266.

        1.     <u>Substantial Relationship Test</u>

The Nevada Supreme Court has stated that when deciding if a particular state possesses a substantial relationship with an insurance contract, courts should analyze the following factors: "(a) the place of contracting, (b) the place of negotiation of the contract, (c)

---

[1] Recently, the Nevada Supreme Court clarified Nevada's choice of law jurisprudence and held that Nevada courts should apply the "most significant relationship test" when deciding choice of law issues. *Gen. Motors Corp. v. Eighth Judicial District*, 134 P.3d 111, 117 (Nev. 2006). However, *General Motors* only applies to tort claims, and because Plaintiff's claims lie in contract, the Court should apply Nevada choice of law jurisprudence as explained above. *See id.*  Plaintiff's third claim, Breach of Covenant of Good Faith and Fair Dealing, may be a contractual as well as a tort claim. *See, e.g., Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698 (Nev. 2006). However, Plaintiff has indicated that her claims are contractual in nature.

the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Id.* (citing *Sotirakis v. U.S.A.A.*, 787 P.2d 788, 790 (Nev. 1990)). Neither Plaintiff nor State Farm have alleged the insurance contract contains a "choice-of-law provision;" therefore, the factors listed above provide the relevant guidance on this issue.

### *i.     The Place of Contracting*

Both Plaintiff and State Farm agree that the "Place of Contracting" is Illinois. (#20, 4-5; #26, 5.)  Thus, this factor favors Illinois law.

### *ii.     The Place of Negotiation of the Contract*

Just as with the first factor, both parties agree that the relevant negotiations took place in Illinois.  Therefore, the second factor to the substantial relationship test also favors applying Illinois law.

### *iii.     The Place of Performance*

The State Farm insurance contract does not specifically state where the contract was to be "performed."  Where a contract makes no statement as to the place of performance, the court may assume it is the same as where the parties entered into the contract. *See, e.g., SEC v. Elmas Trading Corp.*, 683 F. Supp. 743, 751-52 (D. Nev. 1987) (citations omitted).  The State Farm policy lists an Illinois address as the insured's address.  Donoval pays his premiums in Illinois, deals solely with Illinois State Farm agents when discussing his auto insurance, and he licensed and registered the Toyota in Illinois.  The insured's primary residence is Illinois, and at the time he entered into the Toyota policy, Donoval only maintained one residence—Illinois.  In addition, State Farm mails the policy and bills to the

Illinois address. The facts before the Court also indicate that when any party performed its contractual obligation under the insurance policy, such performance took place in Illinois. Accordingly, this factor favors Illinois law.

      iv.    *Domicile, Residence, Place of Incorporation, etc*

As mentioned above, Nevada also looks to the "domicile, residence, nationality, place of incorporation and place of business of the parties." *See, e.g., Williams*, 849 P.2d at 266 (citations omitted). State Farm is an Illinois corporation. In addition, Donoval has stated several times that he resides in Illinois and visits Nevada three to five times each year. Plaintiff also maintains her permanent residence in Illinois. When the parties entered into the insurance contract, Plaintiff was paying out-of-state tuition at UNLV. Plaintiff repeatedly used her father's Illinois address as her own. Furthermore, one month after the accident, Plaintiff listed her Illinois address as her residence when she submitted her "Good Student Recertification" with State Farm to obtain reduced premium payments. Moreover, even though Plaintiff is a student at UNLV, the Toyota policy states that an insured person under the Illinois policy includes an "unmarried and unemancipated child away at school." (#31, Ex. C at 13.) The evidence in this case indicates that the parties domicile and residence was Illinois. Accordingly, this factor favors Illinois law.

      v.    *The Location of the Contract's Subject Matter*

When analyzing this factor, Nevada courts have said that "the location of the insured risk embodies a significant criterion in deciding which law governs." *See, e.g., Williams*, 849 P.2d at 266 (citations omitted). In addition, "the local law of the state which the parties

understood as the principal location of the insured risk during the term of the policy determines the rights and duties under the insurance contract." *Id.* at 266-67.

In an affidavit attached to Plaintiff's opposition, Donoval stated that when he insured the Toyota, he informed State Farm that Plaintiff would be the Toyota's principal driver, and that she would live, and garage the Toyota, in Donoval's Nevada residence. (#27, Ex. at 2.) Based on this affidavit, Plaintiff argued that both Donoval and State Farm understood the Toyota would be in Nevada, and thus the Court should apply Nevada law to the insurance contract because "the local law of the state which the parties understood as the principal location of the insured risk during the term of the policy determines the rights and duties under the insurance contract." *Williams*, 849 P.2d at 266-67. However, since that time, Donoval has admitted in a deposition that his affidavit was incorrect. (#34, Ex. B at 11-15.) Specifically, in his deposition Donoval admitted that he could not have told the State Farm agent that the Plaintiff would live in, and garage, Donoval's Nevada residence because when he insured the Toyota, he did not even own a Nevada residence. Although Donoval admitted to these facts in his deposition, he maintained his earlier statement that he told State Farm the Toyota would be located in Nevada.

State Farm maintains that it understood the Toyota would be located in Illinois. Specifically, State Farm argues the following facts indicate that at the time the parties executed the Toyota policy, both parties understood the Toyota would be located in Illinois:

- Donoval resides in Illinois
- Illinois is Donoval's primary residence
- Donoval insured the Toyota under an Illinois Policy
- Donoval licensed and registered the Toyota in Illinois (and never changed the license or registration to Nevada)

Page 8 of 12

- Donoval paid all premiums in Illinois according to Illinois policy limits
- Plaintiff and Donoval called Illinois State Farm agents when discussing issues surrounding the Toyota
- Donoval acknowledged that he never lived in Nevada and admitted in his deposition that he never told the State Farm Agent that Plaintiff would reside in a Nevada residence
- Plaintiff listed her father's Illinois address, and not her Nevada address, in the Toyota's title, the Vehicle Identification Card, the Odometer Disclosure Statement, Illinois Department of Revenue Sales Tax Transaction Returns, and all documents relating to the Toyota
- Plaintiff also used the Illinois address when purchasing the replacement Toyota
- Plaintiff used her Illinois address when filing her "Good Student Recertification" forms to get a premium reduction on the Toyota policy

State farm argues that this evidence, coupled with Donoval's recent acknowledgement in his deposition, indicates the parties understood that the Toyota would be located in Illinois, and not Nevada. Some of the above-listed incidents occurred after the parties executed the Toyota policy and do not clearly prove the parties understood, at the time of contract execution, that the Toyota would be located in Illinois. However, other than Donoval's alleged statement that he told State Farm the Toyota would be located in Nevada, Plaintiff has provided no evidence to support her argument. A party opposing a motion for summary judgment may not rest upon the mere allegations to establish a genuine issue of material fact for trial. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 248 (1986). Therefore, this factor also favors Illinois law.

The five-factor test favors Illinois law. Even if the Court were to decide that the location-of-the-subject-matter factor favors Nevada, the other four factors favor Illinois, and the Court should therefore hold that the substantial relationship test supports applying Illinois law in this case. *See, e.g., SEC v. Elmas Trading Corp.*, 683 F. Supp. 743, 751-52 (D. Nev. 1987), *aff'd without opinion*, 865 F.2d 265 (9th Cir. 1988) (stating that "when the state of negotiation and the state of performance are the same, that state's law is normally applied").

2. <u>Nevada Public Policy</u>

As mentioned above, in addition to applying the substantial relationship test to insurance actions, Nevada courts hold that the state whose law the court applies must not violate any public policy in Nevada. *Williams*, 849 P.2d at 266. Plaintiff argues that the Courts should apply Nevada law because Illinois law violates Nevada public policy, which affords insureds an expansive recovery under UIM coverage. (#26, 6-7.) Specifically, Plaintiff argues Nevada public policy requires a court to allow a plaintiff to recover beyond the policy limits. While Nevada courts interpret insurance contracts to afford "the greatest possible coverage to the insured," the Nevada Supreme Court applies Nevada public policy "only where other states' laws would preclude *all* recovery for the injured insured." *United Nat'l Ins. Co. v. Frontier ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004); *Williams*, 849 P.2d at 267 (citing *Daniels v. Nat'l Home Life*, 747 P.2d 897 (Nev. 1987)). Illinois law does not "preclude *all* recovery for the injured insured"—it only prohibits recovery above the UIM Illinois limits. Nevada courts have refused to overrule another state's insurance law when that state's law allows recovery. *Id.* Thus, the Illinois recovery limit does not contravene Nevada policy, and the Court will apply Illinois law.

**III.   Illinois Law**

Both Plaintiff and State Farm have agreed that if Illinois law applies, the Court should grant State Farm's Motion for Summary Judgment because Illinois law does not permit recovery in this case. Donoval's insurance policy states that State Farm's liability is limited to the amount by which the UIM coverage exceeds the total bodily injury limits. Moreover, Illinois law prohibits UIM coverage if the insured recovers under a bodily injury liability

policy in an amount equal to or greater than the stated underinsured policy limit. 215 Ill. Comp. Stat. Ann. 5/143a-2 (LexisNexis 2006); *see also Chester v. State Farm Mut. Auto. Ins. Co.*, 591 N.E.2d 488, 493 (Ill. Ct. App. 1992). The particular limits of any UIM coverage are established by the difference between the amount recovered by the plaintiff and the state limit for the UIM coverage. *Id.* In the present case, the liability limits for UIM coverage would be the difference between the stated policy limit ($100,000) and the money recovered from the bodily injury liability coverage ($100,000). Thus, just as Plaintiff has conceded, Illinois law prohibits recovery in this case.

### A. Plainitiff's Supplemental Argument

After filing her opposition, Plaintiff filed Plaintiff's Supplement to Plaintiff's Opposition to Defendant's Motion for Summary Judgment. (#29.) In the supplement, Plaintiff indicates she did not know about an additional Umbrella Insurance Policy covering the Toyota, which she claims would permit Plaintiff to recover damages in excess of the Illinois UIM policy. Plaintiff has asked that "[i]n the event the Court determines that Illinois law is the substantive law in this case, and therefore accepts State Farm's argument that it is not liable pursuant to the terms of the UIM clause of the underlying automobile policy, Ms. Donoval requests that the Court then turn to the umbrella policy and find that sufficient evidence exists to hold State Farm liable under that policy, and deny State Farm's Motion for Summary Judgment on those grounds." (#29.) Because Plaintiff's supplemental claim relates only to the UIM policy, Plaintiff would have to amend her pleadings to make such an argument. Even if the Court were to allow Plaintiff to amend her pleadings, which she has not yet requested to do, she still could not recover because Plaintiff has misinterpreted the

Page 11 of 12

umbrella policy. The umbrella policy does not cover UIM liability. (#31, Ex. B.) In addition, the umbrella policy does not allow recovery for the insured's relatives, defined as "any person related by blood, adoption, or marriage to the named insured." (#31, Ex. B, 2.) Plaintiff is a relative who has maintained her principal residence as Donoval's address in Illinois. Thus, even if the Court were to entertain Plaintiff's supplemental argument, she still could not recover pursuant to her Illinois policy.

## CONCLUSION

Pursuant to the above analysis, IT IS HEREBY ORDERED that State Farm's Motion for Summary Judgment (#20) is *denied*.

DATED this 19th day of December, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE